IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAVIER RAIGOZA,                          )          02:04-cv-1208-GEB-KJM
                                         )
            Plaintiff,                   )          ORDER[*]
                                         )
      v.                                 )
                                         )
ARAMARK UNIFORM SERVICES, INC.;          )
ARAMARK UNIFORM SERVICES; ARAMARK;       )
ARAMARK CORPORATION; ARAMARK             )
UNIFORM AND CAREER APPAREL, INC.;        )
MICHAEL BRODEUR; BILL VERVALIN;          )
KERM HANSEN; JACOB VERVALIN,             )
                                         )
            Defendants.                  )
                                         )

          Each Defendant moves for summary judgment or partial summary

judgment on Plaintiff's claims.  Plaintiff opposes each motion.[1]

                              BACKGROUND

          Plaintiff is an employee of Aramark Uniform and Career

Apparel, Inc.  Plaintiff alleges federal and state law claims against

Defendants Aramark Uniform Services, Inc.; Aramark Uniform Services;

_____

          [*]    These motions were determined to be suitable for decision
without oral argument.  L.R. 78-230(h).

          [1]    Defendants move to strike Plaintiff's opposition and
supporting documents since Plaintiff failed to timely serve his
opposition as required by Local Rule 78-230(c). (Mot. to Strike
filed Oct. 17, 2005.)  Although Plaintiff did not timely serve his
opposition, Defendants have not shown justification for striking
the opposition.  Therefore, Defendants' motion to strike is denied.

1

1 | Aramark; Aramark Corporation; Aramark Uniform and Career Apparel, Inc.

2 | (collectively "Aramark"); Michael Brodeur ("Brodeur"); Bill Vervalin

3 | ("Vervalin"); Kerm Hansen ("Hansen"); and Jacob Vervalin ("Jacob").

4 | <u>DISCUSSION</u>[2]

5 | I.        <u>Retaliation in violation of 42 U.S.C. § 2000e against</u>

6 |           <u>Aramark</u>

7 |           Aramark seeks summary judgment on Plaintiff's retaliation

8 | claim, brought under 42 U.S.C. § 2000e ("Title VII").  To establish a

9 | prima facie case of retaliation, Plaintiff must show that (1) he

10 | engaged in protected activity, (2) the employer subjected him to an

11 | adverse employment action, and (3) there was a causal link between the

12 | protected activity and the employer's action.  <u>Bergene v. Salt River</u>

13 | <u>Project Agric. Improvement and Power Dist.</u>, 272 F.3d 1136, 1140-41

14 | (9th Cir. 2001).  If Plaintiff establishes a prima facie case, the

15 | burden shifts to Aramark to articulate a legitimate, non-

16 | discriminatory reason for the adverse employment action.  <u>Id.</u>  If

17 | Aramark provides such a reason, the burden shifts back to Plaintiff to

18 | show that the proffered reason is pretext for retaliation.  <u>Id.</u>

19 |           Plaintiff has established the first element of a prima facie

20 | case because he engaged in protected activities.  It is undisputed

21 | that Plaintiff engaged in protected activities when he called the

22 | company "hotline" on May 15, 2003, and June 4, 2003, to complain about

23 | discrimination and harassment by Defendants.  (Defs.' P & A at 29;

24 | Pl.'s Opp'n at 16; Brodeur Decl. ¶ 28.)  Plaintiff also engaged in

25 | protected activity when he filed Charges of Discrimination against

26 |

27 | _____

28 |         [2]   The standards applicable to motions for summary judgment are well known, and need not be repeated here.  <u>See</u> <u>Reitter v. City of Sacramento</u>, 87 F. Supp. 2d 1040, 1042 (E.D. Cal. 2000).

Defendants with the Equal Employment Opportunity Commission ("EEOC") and California Department of Fair Employment and Housing on July 10, 2003, and on April 21, 2004.  (Raigoza Decl. ¶¶ 22, 28.)  <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000) (indicating that filing a complaint with the EEOC is a protected activity).

Plaintiff has not identified the adverse employment action element of his retaliation claim with any specificity.  Rather, Plaintiff has merely described in his declaration a number of actions taken by the Defendants after May 15, 2003.  Each of these actions are examined below.

A.   <u>Delayed in returning to work</u>

Plaintiff alleges that Brodeur prohibited him from working for two days when he tried to return to work after being on medical leave and that this prohibition constituted retaliation.  (Raigoza Decl. ¶ 25.)  Brodeur counters declaring that it took him two days to obtain confirmation that Plaintiff could safely drive Aramark's trucks, following Plaintiff's return to work from medical leave for an eye injury and for burning his right hand.  (Brodeur Decl. ¶ 32.)

Plaintiff argues Brodeur should have allowed him to return to work on November 24, 2003, when he provided two doctor's notes.  (Raigoza Decl. ¶ 25, Ex. E.)  However, the note concerning Plaintiff's eye injury stated, "[Plaintiff] has some permanent scaring in the left eye" for which he had a doctor's appointment during the week of November 26, 2003.  (Raigoza Decl. Ex. D.)  The note concluded that Plaintiff could "still do all normal activities."  (<u>Id.</u>)  Brodeur declares that he was unsure what the phrase "all normal activities" meant and since he had concerns as to whether Plaintiff could safely drive a 22-foot truck, he needed further confirmation that Plaintiff's

eye injury would not impair him from safely operating Aramark's truck.
(Brodeur Decl. ¶ 32.)   Plaintiff has not presented evidence that this
legitimate reason is pretextual.   Therefore, this action cannot serve
as a basis for a retaliation claim.

B.   Reassignment of route

Plaintiff alleges that while on medical leave his route was
unfairly assigned to another driver and was only reassigned to him
after he complained to his union.   (Raigoza Decl. ¶ 25.)   Brodeur
counters by declaring that Plaintiff's route was assigned to another
driver because Plaintiff had been on leave for more than twelve weeks,
and Brodeur believed there was no obligation to keep Plaintiff's route
available to him for more than twelve weeks.   (Brodeur Decl.
¶¶ 7, 33.)   Plaintiff has presented no evidence that this explanation
is pretextual.   Therefore, this action cannot serve as a basis for a
retaliation claim.

C.   Failed to recognize Plaintiff for "writing-up" sale

Plaintiff alleges he was denied a commission and sales
credit for the North Valley Car Care account in retaliation for his
protected activities.   (Raigoza Decl. ¶ 26.)   Plaintiff admits he was
not entitled to a commission for this sale, but complains he was
denied sales credit when he was not recognized as "the one that wrote
it up."   (Raigoza Decl. ¶ 26; Depo. Raigoza at 142:9-18, 145:1-7.)
Assuming the failure to recognize Plaintiff for this write-up was an
adverse employment action, Aramark has presented a legitimate, non-
discriminatory reason for the action.   The North Valley Car Care
account was a "national account" and according to company policy no
salesperson receives sales credit or commissions for sales to a
"national account."   (Depo. Raigoza at 143:9-14; Brodeur Decl. ¶ 38.)

1  Plaintiff has not presented evidence that this legitimate reason is

2  pretextual.  Therefore, this complaint cannot serve as a basis for a

3  retaliation claim.

4          D.    Failed to accommodate physical therapy sessions

5          Plaintiff alleges he was prevented from attending prescribed

6  physical therapy sessions.  (Raigoza Decl. ¶ 27.)  Assuming this

7  constitutes an adverse employment action, Plaintiff must present

8  evidence of a causal link between his protected activities and the

9  action that prevented him from attending physical therapy sessions.  A

10  causal link may be inferred from the proximity in time between the

11  protected conduct and the adverse employment action.  Ray, 217 F.3d

12  at 1245; Passantino v. Johnson & Consumer Prods., Inc., 212

13  F.3d 493, 507 (9th Cir. 2000)(stating "when adverse employment

14  decisions are taken within a reasonable period of time after

15  complaints of discrimination have been made, retaliatory intent may be

16  inferred").  Plaintiff's protected activities occurred on

17  May 15, 2003, June 4, 2003, and July 10, 2003, but the alleged adverse

18  employment action was taken after Plaintiff was injured on

19  January 5, 2004.[3]  The nearly six-month gap between the protected

20  activities and alleged adverse action is too long to reasonably infer

21  that the adverse employment action is causally related to the

22  protected activities.  Since Plaintiff has presented no other evidence

23  of a causal connection, this action cannot serve as a basis for a

24  retaliation claim.

25          E.    Accused of stealing towels

26

27  _____

      [3]    Plaintiff  also  engaged  in  protected  activity  on
28  April 21, 2004.  However, that protected activity is immaterial
    since it occurred after the retaliatory act alleged here.

Additionally, Plaintiff alleges he was falsely accused of stealing towels. (Raigoza Decl. ¶ 29.) Aramark counters this allegation with Plaintiff's own deposition testimony and the declarations of Brodeur and Dean Baugh ("Baugh").

Plaintiff admitted in his deposition testimony that he took towels not designated for his route without permission. (Depo. Raigoza at 296:1-297:12, 301:17-24.) Baugh declares that he saw Plaintiff put those towels on his truck and that the towels were not removed before Plaintiff left on his route. (Depo. Baugh at 21:8-22:4.) Baugh declares he informed Brodeur of what he saw. (Id.) Brodeur declares he inspected Plaintiff's truck when Plaintiff returned and did not find the towels on Plaintiff's truck. (Brodeur Decl. ¶ 39.) Brodeur then questioned Plaintiff about the towels and Plaintiff denied taking them or knowing where they were. (Brodeur Decl. ¶¶ 30, 40.) The declarations of Brodeur and Baugh provide a legitimate, non-discriminatory reason for probing Plaintiff about possible towel theft. Since Plaintiff has not presented evidence that the reason presented by Aramark is pretextual, Plaintiff cannot use this action as a basis for a retaliation claim.

F.   Harassed about Craig Hall account

Plaintiff alleges that he was "harassed and subject to . . . retaliation" when Brodeur asked Plaintiff about the truth of something a customer, Roger Hoss ("Hoss"), claimed Plaintiff said.[4] (Raigoza Decl. ¶ 30.) Brodeur's declaration about this matter reveals that Hoss, the owner of Craig Hall, informed Brodeur that he had problems

---

[4]   Plaintiff declares that Brodeur "harassed and subjected [him] to retaliation . . . with respect to the Craig Hall account." But Plaintiff has not identified any actions other than Brodeur's inquiry, discussed above, in support of his assertion.

with the service Plaintiff was providing and that when Hoss asked
Plaintiff about product inventory Plaintiff responded "no habla
ingles." (Brodeur Decl. ¶ 41.)   Plaintiff rejoins he did not use
the words "no habla ingles" to anyone at the Craig Hall account.
(Id.)  Brodeur admits that he "spoke with [Plaintiff] about Hoss'[s]
criticism," but states Plaintiff was not disciplined because of Hoss's
complaint.  (Id. at 42.)  The mere fact that Brodeur spoke to
Plaintiff about Hoss's complaint is not an adverse employment action
because it is not "reasonably likely to deter employees from engaging
in protected activity." Ray, 217 F.3d at 1243.  Even if Brodeur's
action was an adverse employment action, Hoss's complaint is a
legitimate reason for Brodeur's action and Plaintiff has not presented
evidence of pretext.  Therefore, this incident may not serve as a
basis for a retaliation claim.

     G.   Harassed about "route book"

Plaintiff alleges that he was "harassed and subject[ed] to
. . . retaliation with respect to a 'route book.'" (Raigoza Decl.
¶ 31.)  Specifically, Plaintiff states that Vervalin harassed and
retaliated against him "by wanting to give [Plaintiff] a written
warning." (Id.)  Plaintiff's bald assertion that Vervalin wanted to
give him a written warning does not constitute an adverse employment
action.

However, Vervalin acknowledges that he verbally reprimanded
Plaintiff for his failure to complete a route book.  (Decl. Vervalin
¶ 20.)  Assuming that this reprimand constitutes an adverse employment
action, Aramark has presented legitimate reason for the reprimand.
Vervalin declares that completing a route book is one of Plaintiff's
job duties and he requested that Plaintiff complete his route book

within two weeks.  (<u>Id.</u> at ¶ 19.)  More than four weeks after the request, Plaintiff had not completed his route book.  (<u>Id.</u> at ¶ 20.) At that time Plaintiff was the only employee to have not completed a route book.[5]  (<u>Id.</u>)  Plaintiff's failure to complete his route book is a legitimate reason for the reprimand.  Therefore, this incident may not serve as a basis for a retaliation claim.

        H.   <u>Harassed about Pelican Roost account</u>

        Plaintiff alleges that he was "harassed, unfairly accused, and retaliated against when the [Pelican Roost] account was lost." (Raigoza Decl. ¶ 32.)  However, other than these conclusory assertions Plaintiff has not identified what acts were taken against him in relation to the Pelican Roost account.  Therefore, this incident may not serve as a basis for a retaliation claim.

        I.   <u>Harassed about timecard keeping</u>

        Plaintiff alleges that he was "harassed and subjected to . . . retaliat[ion] with respect to his timecard and timekeeping" by Lew Allison's ("Allison") "harassing discussion." (Raigoza Decl. ¶ 33.)  Assuming the discussion about which Plaintiff complains constitutes an adverse employment action, Aramark has presented a legitimate reason for it.  Allison declares that Plaintiff incorrectly recorded his time on his timecard.  (Allison Decl. ¶ 11.)  Plaintiff admits that he incorrectly recorded time on his timecard.  (Depo.

---

     [5]   Plaintiff disputes this point in his declaration. (Raigoza Decl. ¶ 31.)  However, Plaintiff states in his deposition testimony that he knows of no other employees who did not complete route books as requested.  (Raigoza Depo. at 250:2-13.) Accordingly, no genuine issue of fact exists.  <u>Disc Golf Ass'n, Inc. v. Champion Discs, Inc.</u>, 158 F.3d 1002, 1008 (9th Cir. 1998)("A party cannot create a triable issue of fact, and thus survive summary judgment, merely by contradicting his or her own sworn deposition testimony with a later declaration.")

Raigoza at 261:9-262:23.)  Plaintiff's inaccurate time keeping is a
legitimate reason for Allison's action.  Plaintiff has presented no
evidence that this explanation is pretextual.  Therefore, this
incident may not serve as a basis for a retaliation claim.

    J.   Harassed and denied accommodation regarding subpoena

        Plaintiff alleges he was "harassed and haggled" by Allison
and Brodeur about Plaintiff's responding to a subpoena from the Glen
County District Attorney when they denied him a day off from work to
respond to the subpoena and then required documentation for his
absence from work.  (Raigoza Decl. ¶ 34, 35.)  The evidence presented
by Aramark, however, establishes that Plaintiff was permitted to leave
work early in order to appear in court as required by the subpoena.
(Depo. Raigoza 210:23-211:2; Allison Decl. ¶ 13.)  Further, Plaintiff
admits that he was not permitted to take the entire day off because
Aramark was "short-handed" that day.  (Depo. Raigoza 208:22-209:6.)
Plaintiff also admits that documentation is required for time taken
off work.  (Id. 216:21-24.)  Because, legitimate reasons exist for the
actions of Allison and Brodeur which Plaintiff has not shown to be
pretextual, these alleged incidents may not serve as a basis for a
retaliation claim.

    K.   "Most Wanted" Poster

        Plaintiff also alleges "he was depicted like a criminal in
[a] poster which was posted in public view."  (Raigoza Decl. ¶ 36.)
Assuming this action constitutes an adverse employment action, Aramark
has identified a legitimate reason for the action.  Allison declares
that the poster was part of an effort to boost the sales of low
performing employees and that Plaintiff was depicted as "Aramark's
Most Wanted" because he ranked lowest in overall sales performance at

the Chico depot.  (Decl. Allison ¶ 5.)  Allison declares that
Plaintiff's picture appeared along with pictures of four other low
performing employees at the Chico depot and that similar posters were
displayed at the Aramark depot in Redding as part of Aramark's effort
to boost sales.  (Id.)  Plaintiff has not offered any evidence to
establish that the reason presented by Aramark is pretextual.
Therefore, this act of alleged retaliation may not serve as a basis
for a claim.

L.   Denied commission on Orland Sand & Gravel account

Plaintiff also alleges that Brodeur "took the Orland Sand &
Gravel account away from [him]" and denied him commissions on sales
made to the account.  (Raigoza Decl. ¶ 37.)  Plaintiff, however, has
presented no evidence of a causal link between this action and his
protected activities.  Nor has Plaintiff provided the date on which
this alleged action occurred from which a causal link could be
inferred.  Therefore, Plaintiff has failed to establish a prima facie
case of retaliation based on this action.

M.   Harassed about Albatross account

Plaintiff alleges he was "berated and harassed by [] Brodeur
for not servicing [the Albatross] account, although [he] had been told
by numerous people . . . not to service this non-paying customer."
(Raigoza Decl. ¶ 38.)  However, other than these conclusory assertions
Plaintiff has not identified what acts were taken against him in
relation to the Albatross account.  Further, Plaintiff has presented
no evidence of a causal link between this action and his protected
activities.  Nor has Plaintiff provided the date on which this alleged
action occurred from which a causal link could be inferred.

10

1 Therefore, Plaintiff has failed to establish a prima facie case of
2 retaliation based on this action.

3          N.   Failed to send "encouraging messages"

4          Plaintiff alleges that Brodeur did not give him "encouraging
5 messages" when other employees were "provided these communications."
6 (Raigoza Decl. ¶ 39.)   This is not an adverse employment action
7 because it is not likely to deter employees from engaging in protected
8 activities.   See Manatt v. Bank of America, NA, 339 F.3d 792, 803 (9th
9 Cir. 2003) ("Mere ostracism in the workplace is not grounds for a
10 retaliation claim . . . .").   Therefore, it cannot serve as a basis
11 for a retaliation claim.

12          O.   Hostile Work Environment

13          Finally, Plaintiff argues that he was subjected to a hostile
14 work environment and that this constitutes a retaliatory adverse
15 employment action.   (Pl.'s Opp'n at 30.)   Subjecting an employee to a
16 hostile work environment because he engaged in protected activity can
17 serve as a basis for a retaliation claim.   Ray, 217 F.3d at 1245.
18 Plaintiff argues that each alleged action, discussed above, asserted
19 as a basis for his retaliation claim, also supports a finding that he
20 was subjected to a hostile work environment in retaliation for his
21 protected activities.

22          However, Plaintiff, may not support his hostile work
23 environment-based retaliation claim with actions for which an
24 unrebutted legitimate reason has been established.   See Noviello v.
25 City of Boston, 398 F.3d 76, 93 (1st Cir. 2005) (indicating that
26 injurious or offensive acts committed with a legitimate purpose are
27 not inherently wrong and should not be considered in the hostile work
28 environment analysis).   Therefore, only four alleged actions may be

considered in the hostile work environment analysis since Plaintiff failed to rebut the legitimate reasons presented by Aramark as to all the other alleged actions offered by Plaintiff in support of his retaliation claim.  The four alleged actions which may be considered are: (1) the harassment relating to the Pelican Roost account, (2) the harassment relating to the Albatross account, (3) the failure to accommodate Plaintiff's physical therapy sessions, and (4) the failure to pay Plaintiff a commission on the Orland Sand & Gravel account.[6]

Although Plaintiff declares he was "harassed" in relation to the Pelican Roost and Albatross accounts, he provides no facts as to the nature or extent of this alleged harassment, or the dates of the alleged harassment.  Plaintiff's "purely conclusory [declarations] of alleged [harassment concerning these accounts lack] concrete, relevant particulars," and are thus insufficient to withstand summary judgment. Forsberg v. Pacific Northwest Bell Telephone Co., 840 F.2d 1409, 1419 (9th Cir. 1988); see also Vasquez, 349 F.3d at 642-43 (disregarding vague assertions that plaintiff was harassed since they lack "specific factual allegations" of specific incidents of harassment).

Regarding the remaining two alleged actions, Plaintiff failed to present evidence from which reasonable inferences could be drawn that these alleged actions have a causative connection to any of Plaintiff's protected activity.

For the reasons stated, summary judgment is entered in favor of Aramark on Plaintiff's retaliation claims alleged under Title VII.

---

[6]    Aramark offered legitimate reasons for not paying Plaintiff a commission on the Orland & Sand and Gravel account, but Plaintiff has disputed that showing.

1  II.        Creation of a Racially Hostile Work Environment in violation
2             of Title VII against Aramark

3             Aramark seeks summary judgment on Plaintiff's claim alleging
4  the creation of a racially hostile work environment in violation
5  Title VII.  "To prevail on a hostile workplace claim premised on . . .
6  race . . . a plaintiff must show: (1) that he was subjected to verbal
7  or physical conduct of a racial . . . nature; (2) that the conduct was
8  unwelcome; and (3) that the conduct was sufficiently severe or
9  pervasive to alter the conditions of the plaintiff's employment and
10 create an abusive work environment."  Vasquez v. County of Los
11 Angeles, 349 F.3d 634, 642 (9th Cir. 2003).  Aramark argues that
12 summary judgment is appropriate because Plaintiff has not established
13 that he was subjected to sufficiently severe or pervasive racially
14 motivated conduct.  "[T]o survive summary judgment, [Plaintiff] must
15 show the existence of a genuine factual dispute . . . as to whether a
16 reasonable [person in his situation] would find the workplace so
17 objectively and subjectively hostile as to create an abusive working
18 environment."  McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1112 (9th
19 Cir. 2004).

20            To establish objective hostility Plaintiff has presented
21 evidence that Vervalin once referred to Plaintiff as "beaner" outside
22 of Plaintiff's presence, that Vervalin once referred to Plaintiff as
23 "spic" outside of Plaintiff's presence, and that Vervalin referred to
24 an African-American employee as "Black Crow."[7] (Raigoza Decl.
25 ¶¶ 13, 20.)  Plaintiff also indicates that between August 2002 and

26

27
        [7]     It is assumed that Plaintiff has established subjective
28 hostility since he declares that the work environment caused him to
   "suffer[] greatly."  (Raigoza Decl. ¶ 43.)

July 2004 Vervalin engaged in the following racially motivated conduct: taking a portion of Plaintiff's bonus, taking credit for Plaintiff's sales, making sexual innuendos toward Plaintiff on one occasion, and harassing Plaintiff.[8]  (Raigoza Decl. ¶¶ 9, 16, 17, 31.) The issue is whether Vervalin's alleged comments and other actions permit the reasonable inference that Plaintiff was subject to a hostile work environment.  See McGinest, 360 F.3d at 1116 n.9 (stating that a racial slur may indicate that "other abusive remarks . . . were also motivated by racial hostility").

        Although, there is no question that Vervalin's alleged utterances are offensive, the facts alleged by Plaintiff are insufficient to reasonably infer that his workplace was objectively hostile.  Vervalin's conduct, including the utterance of three racial epithets over the course of two years, was not severe or pervasive enough to create a racially hostile work environment.  See Vasquez, 349 F.3d at 643 (concluding the plaintiff had not shown an objectively hostile work environment when a manager made two derogatory statements to the plaintiff during a six-month period and the plaintiff suffered other harassment over a one-year period). Therefore, summary judgment is entered in favor of Aramark on Plaintiff's racially hostile work environment claim, brought under Title VII.

---

        [8]    Plaintiff also alleges that Brodeur's inquiry into whether Plaintiff responded to a customer's question with the words "no habla ingles," is evidence of a racially hostile work environment.  (Raigoza Decl. ¶ 30.)  As discussed in section III, this inquiry has not been shown to have been racially motivated.

III.      <u>Racial Discrimination in the Making and Enforcement of</u>
          <u>Contracts in violation of 42 U.S.C. § 1981 against Aramark,</u>
          <u>Brodeur, and Vervalin</u>

          Aramark, Brodeur, and Vervalin seek summary judgment on Plaintiff's claim that they discriminated against him in the making and enforcing of contracts because of his race in violation of 42 U.S.C. § 1981.  To survive summary judgment Plaintiff must show that Aramark, Brodeur, or Vervalin "acted with intent to discriminate" against him based on his race.  <u>Mustafa v. Clark County Sch.</u> <u>Dist.</u>, 157 F.3d 1169, 1180 (9th Cir. 1998).

          Vervalin argues that summary judgment is appropriate because Plaintiff has not alleged an "affirmative act" by Vervalin and "cannot show that Vervalin had any discriminatory intent."  (Defs.' P & A at 38.)  However, Plaintiff has presented evidence that Vervalin engaged in an affirmative act toward Plaintiff when Vervalin took a portion of Plaintiff's bonus and later returned it.  (Raigoza Decl. ¶¶ 9-10.)  This action constituted an adverse employment action.  <u>See</u> <u>Univ. of Hawaii Prof'l Assembly v. Cayetano</u>, 183 F.3d 1096, 1105-06 (9th Cir. 1999) (holding that receiving pay even a couple of days late can seriously affect an employee's financial situation and constitutes substantial impairment under the Contracts Clause).

          Plaintiff has presented evidence that Vervalin acted with discriminatory intent, pointing to Vervalin's references to Plaintiff as a "beaner" and "spic."  (Raigoza Decl. ¶¶ 13, 20.)  Such racially "[d]iscriminatory remark[s] may create an inference of discriminatory motive" if there is "a sufficient nexus between the alleged discriminatory remarks and the adverse employment [action]."  <u>Mustafa</u>, 157 F.3d at 1180.  Here Plaintiff presents evidence that

Vervalin made "ethnically biased remarks" and was in a "position of
authority" over Plaintiff.  This evidence is sufficient to establish
the connection necessary for Plaintiff to survive summary judgment.
Id. ("Evidence of ethnically biased remarks from a person in . . . a
position of authority are sufficient to allege the connection
necessary . . . to survive summary judgment.")  Therefore, Vervalin
and Aramark's motion for summary judgment on Plaintiff's claim that
they discriminated against him in the making and enforcing of
contracts because of his race in violation of 42 U.S.C. § 1981 is
denied.[9]

Brodeur argues summary judgment is appropriate because
Plaintiff has not presented evidence that he acted with racial animus.
Plaintiff admitted in his deposition testimony that Brodeur never used
a racial slur or epithet.  (Depo. Raigoza 14:18-21.)  The only alleged
incident involving Brodeur that tangentially relates to Plaintiff's
race is Brodeur's question about the words "no habla ingles."
However, Brodeur's inquiry into whether Plaintiff responded to a
customer's concerns with the words "no habla ingles" does not evince
an ethnic bias on the part of Brodeur.  A customer's complaint about
the "no habla ingles" comment was the actual reason for the exchange
between Brodeur and Plaintiff.  (Brodeur Decl. ¶ 41.)  As such,
Brodeur's question was not an "ethnically biased remark" that creates

---

[9]     Defendants Aramark Uniform Services, Aramark, Aramark
Corporation, and  Aramark Uniform and Career Apparel, Inc. seek
summary judgment on Plaintiff's 42 U.S.C. § 1981 claim because
Plaintiff has not presented any evidence that he was employed by
them. (Defs.' P & A at 21.)  Defendants, however, have provided no
legal authority to support this argument.  Accordingly, it is not
clear that the absence of this fact is fatal to Plaintiff's 42
U.S.C. § 1981 claim against Defendants Aramark Uniform Services,
Aramark, Aramark Corporation, and  Aramark Uniform and Career
Apparel, Inc.  Therefore, the motion is denied.

an inference of discrimination under <u>Mustafa</u>.  Therefore, summary judgment is entered in favor of Brodeur on Plaintiff's claim that he discriminated against him in the making and enforcing of contracts because of his race in violation of 42 U.S.C. § 1981.

IV.     <u>Conspiracy to Deprive Plaintiff of Equal Protection of the Law in violation of 42 U.S.C. § 1985</u>

Defendants seek summary judgment on Plaintiff's claim that they conspired to deprive him of equal protection of the law in violation of 42 U.S.C. § 1985.  To prove this claim Plaintiff "must show: (1) a conspiracy; (2) for the purpose of depriving [him] of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby [he was] either injured in his person or property or deprived of a right or privilege of a United States citizen." <u>Mustafa</u>, 157 F.3d at 1181.  Plaintiff has presented no evidence from which a conspiracy could reasonably be inferred to exist between any of the Defendants to deprive him of equal protection of the law.  Therefore, summary judgment is entered in favor of Defendants on Plaintiff's claim that they conspired to deprive him of equal protection of the law in violation of 42 U.S.C. § 1985.

V.      <u>Hostile Work Environment in Violation of Cal. Gov't Code § 12940 against Vervalin</u>

Vervalin seeks summary judgment on Plaintiff's claim against him for a racially hostile work environment in violation of Cal. Gov't Code § 12940 (the "FEHA").  California has adopted the Title VII standard for evaluating hostile work environment claims under the FEHA.  <u>Aguilar v. Avis Rent a Car System, Inc.</u>, 21 Cal. 4th 121, 130 (1999).  As discussed in section II above, Plaintiff has failed to establish that Vervalin subjected him to a hostile work environment.

Therefore, summary judgment is entered on behalf of Vervalin on Plaintiff's claim that he subjected him to a hostile work environment in violation of the FEHA.

VI.      Failure to Accommodate Injury in violation of the FEHA

Aramark seeks summary judgment on Plaintiff's claim against it for failure to accommodate his injury in violation of the FEHA. The elements of a failure to accommodate claim are: 1) that plaintiff is a qualified individual, 2) that plaintiff has a disability covered by the statute, and 3) that defendant failed to provide reasonable accommodations for plaintiff's disability.  Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 256-57 (2000).  Aramark argues that Plaintiff's injury does not qualify as a disability under the statute, and therefore summary judgment is appropriate.

Plaintiff alleges he suffered a leg injury at work on January 5, 2004, that constitutes a disability. (Raigoza Decl. ¶ 27.) Plaintiff's leg injury  "does not qualify as a disability under the statute unless it limits [Plaintiff's] ability to participate in major life activities." Jensen, 85 Cal. App. 4th at 257 (internal quotation marks omitted) (citations omitted).  Plaintiff has failed to present any evidence that his leg injury limited a major life activity. Plaintiff simply states that he was "negatively impacted" by the injury and that his "walking legs [sic], lower back, and hip hurt every day." (Raigoza Decl. ¶ 27.)  There is no evidence that Plaintiff's ability to walk or work, or engage in any other major life activity was impaired.  Therefore, summary judgment is entered on behalf of Aramark on Plaintiff's claim for failure to accommodate his injury in violation of the FEHA.

1     VII.     <u>Retaliation in Violation of the FEHA against Brodeur</u>

2         Brodeur seeks summary judgment on Plaintiff's claim for

3 retaliation in violation of the FEHA. California has adopted the

4 Title VII standard for evaluating retaliation claims under the FEHA.

5 <u>See</u> <u>Fisher v. San Pedro Peninsula Hosp.</u>, 214 Cal. App. 3d 590, 614

6 (1989). As discussed in section I above, Plaintiff has failed to

7 establish a basis for a retaliation claim under Title VII. Therefore,

8 summary judgment is entered on behalf of Brodeur on Plaintiff's claim

9 that he retaliated against him in violation of the FEHA.

10     VIII.     <u>Negligence in Violation of the FEHA against Aramark</u>

11         Aramark seeks summary judgment on Plaintiff's negligence

12 claim, brought under the FEHA. Aramark argues that Plaintiff's claim

13 for negligence must fail because he has not established a claim for

14 harassment or discrimination under the FEHA. In order for a claim of

15 employer negligence under the FEHA to survive summary judgment, the

16 court must first find that a "foundational predicate of harassment or

17 discrimination" exists. <u>See</u> <u>Trujillo v. North County Transit</u>

18 <u>Dist.</u>, 63 Cal. App. 4th 280, 289 (1998) (holding that "employers

19 should not be held liable to employees for failure to take necessary

20 steps to prevent such conduct, except where the actions took place and

21 were not prevented"); <u>Tritchler v. County of Lake</u>, 358 F.3d 1150, 1155

22 (9th Cir. 2004) (indicating that a finding of harassment or

23 discrimination under the FEHA is a predicate to a valid negligence

24 claim under the FEHA). As discussed in sections V, VI, and VII above,

25 summary judgment has been entered in favor of Defendants on all

26 Plaintiff's FEHA claims for harassment and discrimination. Therefore,

27 summary judgment is entered on behalf of Aramark on Plaintiff's claim

28 that it was negligent under the FEHA.

IX.        Public Disclosure of Private Facts against Aramark and Jacob

Aramark and Jacob seek summary judgment of Plaintiff's claim for public disclosure of private facts.  To prevail on this claim Plaintiff must establish that there was a (1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to [a] reasonable person and (4) which is not of legitimate public concern.  Shulman v. Group W Productions, Inc., 18 Cal. 4th 200, 214 (1998).  Plaintiff alleges that all the elements of this claim were met when Jacob informed customers on Plaintiff's route that Plaintiff suffered from rectal bleeding and would not be returning to work.  (Am. Compl. ¶¶ 44-45.)  In support of this allegation Plaintiff testified in his deposition that two business owners on his route told him that Jacob said Plaintiff was "all f---ed up" and "sh-tting blood" and that as a result he would not be returning to work.  (Raigoza Depo. at 242:6-24.)

Jacob argues that Plaintiff's claim must fail because there was no "public disclosure."  In order for the "public disclosure" element to be satisfied there must be "communication to the public in general or to a large number of persons as distinguished from one individual or a few."  Porten v. Univ. of San Francisco, 64 Cal. App. 3d 825, 828 (1976).  Plaintiff has provided evidence that Jacob made the alleged statements to six individuals.  (Raigoza Depo. at 238:8-240:8.)  Aramark and Jacob argue that there is evidence that fewer than six people heard the alleged statements.  Even if six individuals heard the statements Jacob allegedly made, Plaintiff has failed to show that there was a "public disclosure" in this case.  Communication to six individuals is not communication to a "large number of persons."  Moreover, the communication was to only two

groups of people--the Plaintiff's cousin and her husband and a family that operated a restaurant Plaintiff serviced.  These communications were not made to "the public in general or to a large number of persons."  Therefore summary judgment is entered in favor of Aramark and Jacob on Plaintiff's claim for public disclosure of private facts.

X.          False Light against Aramark and Jacob

          Aramark and Jacob seek summary judgment of Plaintiff's claim for false light.  To prevail on this claim Plaintiff must show that (1) Jacob disclosed to one or more persons information about or concerning Plaintiff that was presented as factual but that was actually false or created a false impression about him; (2) the information was understood by one or more persons to whom it was disclosed as stating or implying something highly offensive that would have a tendency to injure Plaintiff's reputation; (3) by clear and convincing evidence, Jacob acted with constitutional malice; and (4) Plaintiff was damaged by the disclosure.  Solano v. Playgirl, Inc., 292 F.3d 1078, 1082 (9th Cir. 2002) (citing Fellows v. Nat'l Enquirer, Inc., 42 Cal. 3d 234 (1986)).  Jacob argues that summary judgment is appropriate because the information allegedly communicated was not false, nor was it highly offensive.

          The statements allegedly made by Jacob would reasonably create two distinct impressions in the mind of a person who heard them.  The first is that Plaintiff suffered from a medical condition that caused rectal bleeding.  And the second is that Plaintiff would not be returning to work.  The first impression made by the alleged statements is clearly not false.  Plaintiff admitted in his deposition testimony that while on medical leave he suffered from rectal bleeding.  (Raigoza Depo. 243:10-15.)  The second impression is not

necessarily true.  Jacob has presented no evidence that Plaintiff was
not going to return to work when he took medical leave.  However, that
false impression (that Plaintiff would not be returning to work) is
not so "highly offensive" that it would injure Plaintiff's reputation.
Therefore summary judgment is entered in favor of Aramark and Jacob on
Plaintiff's claim for false light.

XI.      Slander against Aramark and Jacob

         Aramark and Jacob seek summary judgment on Plaintiff's claim
for slander.  "Slander is a false and unprivileged publication, orally
uttered . . . which: . . . [i]mputes in him the present existence of
an infectious, contagious, or loathsome disease; [t]ends directly to
injure him in respect to his office, profession, trade or business,
either by imputing to him general disqualification in those respects
which the office or other occupation peculiarly requires, or by
imputing something with reference to his office, profession, trade, or
business that has a natural tendency to lessen its profits; . . . or
[w]hich, by natural consequence, causes actual damage." Cal. Civ.
Code § 46.  There can be no recovery for slander without a falsehood.
Baker v. Los Angeles Herald Examiner, 42 Cal. 3d 254, 259 (1986).

         Plaintiff alleges that Jacob "made a false oral statement
regarding [Plaintiff]" which indicated "that [Plaintiff] had a
loathsome disease and [Plaintiff] is unqualified and/or unfit to
perform his [job]."  (Am. Compl. ¶¶ 104, 106.)  Aramark and Jacob
argue that summary judgment is appropriate because the alleged
statements are true, and if false they did not damage Plaintiff.

         As discussed above, the alleged statements about Plaintiff's
medical condition were true.  As such the statements are not
actionable as slander.  The alleged statement about Plaintiff not ever

returning to work is not one which could reasonably be found to damage Plaintiff's reputation or cause him any actual harm.  Therefore summary judgment is entered in favor of Aramark and Jacob on Plaintiff's claim for slander.

<u>CONCLUSION</u>

For the stated reasons, summary judgment is entered on behalf of Defendants on all of Plaintiff's claims, except Plaintiff's claim against Aramark and Vervalin for discrimination in the making and enforcement of contracts alleged under 42 U.S.C. § 1981.

IT IS SO ORDERED.

Dated:  December 21, 2005

<u>/s/ Garland E. Burrell, Jr.</u>
GARLAND E. BURRELL, JR.
United States District Judge